IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


WILLIAM M. FRANCESCONE,          )
                                 )
             Plaintiff           )
                                 )
        vs.                      )    Civil Action No. 03-324
                                 )    Judge Joy Flowers Conti/
FIRSTENERGY CORP.,               )    Magistrate Judge Sensenich
PENNSYLVANIA POWER COMPANY,      )    Re:  Docs. No. 36, 42
OHIO EDISON COMPANY,             )
FIRSTENERGY SEVERANCE BENEFITS   )
PLAN, and SEVERANCE PLAN         )
COMMITTEE,                       )
             Defendants          )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


I.   RECOMMENDATION

        It is recommended that Plaintiff's motion for partial
summary judgment be denied.  It is further recommended that
Defendants' motion for summary judgment be granted.


II.  REPORT

        Plaintiff, William M. Francescone, brings this action
against Defendants, FirstEnergy Corp., Pennsylvania Power
Company, Ohio Edison Company, FirstEnergy Severance Benefits
Plan, and Severance Plan Committee, under section 502(a)(1)(B) of
the Employment Retirement Income Security Act of 1974 (ERISA),
29 U.S.C.A. § 1132(a)(1)(B), for recovery of benefits he alleges
are due him under FirstEnergy's Severance Benefits Plan ("the
Plan").  Plaintiff also claims that Defendants breached their
fiduciary duty under ERISA, in violation of section 502(a)(3),

29 U.S.C.A. § 1132(a)(3).  Defendants have filed a Motion for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Specifically, they move for judgment in their favor as to Plaintiff's section 502(a)(3) ERISA claim on the grounds that:  (1) the second amended complaint contains no allegations supporting a breach of fiduciary duty claim against them; and (2) Plaintiff has available a sufficient remedy under section 502(a)(1)(B), which precludes relief under section 502(a)(3) because a claim for benefits cannot be made under the guise of a breach of fiduciary duty claim.  Further, they move for summary judgment as to Plaintiff's ERISA section 502(a)(1)(B) claim against FirstEnergy Corp., Pennsylvania Power Company, Ohio Edison Company, FirstEnergy Severance Benefit Plan, and Severance Benefits Committee, on the ground that the Severance Benefits Committee's decision that Plaintiff was not eligible for severance benefits is reasonable and not arbitrary and capricious.

Plaintiff has filed a motion for partial summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  Specifically, he moves for judgment in his favor as to his claim under section 502(a)(1)(B) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1132(a)(1)(B), that he is entitled to recover benefits he alleges are due him under FirstEnergy's Severance Benefits Plan.

For the reasons that follow, Defendants' motion under Rule 56(c) should be granted and Plaintiff's motion under Rule 56(c) should be denied.

A. <u>Rule 56(c) Summary Judgment Standard</u>

Summary judgment is appropriate if, resolving all inferences and doubts in favor of the non-movant, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986).

  B. Undisputed Material Facts

        Defendant FirstEnergy Corp. ("FirstEnergy") is a
corporation and registered holding company with its headquarters
and principal place of business in Akron, Ohio. (Joint Statement
of Material Facts (Doc. No. 41) ¶ 8.)  Defendant Ohio Edison
Company ("Ohio Edison") is a wholly owned subsidiary of Defendant
FirstEnergy Corp.  (Joint Facts ¶ 7.)  Defendant Pennsylvania
Power Company ("Penn Power") is a wholly owned subsidiary of
Defendant Ohio Edison Company.  (*Id.* ¶ 6.)  Defendant FirstEnergy
Severance Benefits Plan ("the Plan") is an ERISA governed
benefits plan that is designed to provide severance benefits to
employees of FirstEnergy or any of its operating companies who
meet the eligibility requirements under the Plan.  (*Id.* ¶ 9.)
Defendant Severance Benefits Committee, incorrectly designated by
Plaintiff as Severance Plan Committee (the "Committee"),
administers the Plan.  (*Id.* ¶ 10.)

        Plaintiff was employed by Defendant Penn Power from
1976 through August 1, 2000.  (*Id.* ¶ 11.)  Each  position of
employment at Penn Power had associated with it a "standard
rate," which was a guideline or median rate for determining the
salary for that position.  (*Id.* ¶¶ 14-15.)  Plaintiff held the
position of Operations Specialist-A with Penn Power in early July

4

2000.  (*Id.* ¶ 12.)   In July 2000, Plaintiff's position of Operations Specialist-A carried a "standard rate" of $43,138.00, but he actually was paid an annual salary of $45,443.00, which constituted 105.34% of the standard rate.  (Joint Facts ¶ 13.) At its discretion, and depending on particular facts and circumstances, Penn Power could compensate an employee anywhere within a range of 20% below the standard rate to 20% above the standard rate for any given position with the company.  (*Id.* ¶ 16.)   In July 2000, Plaintiff was informed that Penn Power was planning a regional reorganization.  (*Id.* ¶ 18.)   He was informed by the company in a letter dated July 7, 2000, that he was being promoted from his position of Operations Specialist-A to the position of Customer Service Specialist-A, at a salary "to be determined."  (*Id.* ¶ 19.)   The letter indicated that the Customer Service Specialist-A position had a "standard rate" of $48,150.00.  (*Id.*)   In addition, it stated: "Should you not report to this assignment, you will be considered to have resigned your employment and you will not be eligible for severance benefits.  (*Id.* ¶ 22.)

Plaintiff was called by his supervisor, Ralph Smith ("Smith"), six days after he received the July 7, 2000 letter. (Joint Facts ¶ 28.)   Mr. Smith informed him that a mistake had been made and that he would be working as a Customer Service Specialist-B ("Specialist-B") rather than a Customer Service

Specialist-A ("Specialist-A").  (*Id.*)  At the time of Mr. Smith's call, Plaintiff did not know what the salary was for the Specialist-A position.  (*Id.* ¶ 29.)  Plaintiff testified that the Customer Service-B position was the equivalent of the position he held as Operations Specialist-A at the time of the reorganization.  (*Id.* ¶ 30.)  After Smith informed Plaintiff that he would be a Specialist-B instead of a Specialist-A, Plaintiff looked into the severance benefits package and submitted a request for severance benefits to human resources.  (*Id.* ¶ 40.) Fred Giese ("Giese"), Chairman of the Severance Benefits Committee, informed Plaintiff, in a letter dated October 26, 2000, that his request for payment of severance benefits was denied.  (*Id.* ¶ 41; see also, Ex. 5 to Francescone Dep. in Defs.' Appendix (Doc. No. 40) Ex. B and Pl.'s Appendix (Doc. No. 53) Ex 1.)  Plaintiff appealed the determination of the Severance Benefits Committee.  (Joint Facts ¶ 42.)  On March 6, 2003, he filed the instant lawsuit, seeking payment of the severance benefits he claims were denied to him unlawfully.  (*Id.* ¶ 43.) Plaintiff exhausted his administrative remedies under the Plan before he commenced the instant litigation.  (*Id.* ¶ 3.)  At his deposition, he admitted that he is seeking only the payment of severance benefits under the Plan.  (*Id.* ¶ 4.)

FirstEnergy's Severance Benefits Plan is a welfare benefit plan

> administered by a Severance Benefits
> Committee consisting of five individuals
> appointed by the Chief Executive Officer of
> FirstEnergy Corp.  The Severance Benefits
> Committee has the sole discretion and
> exclusive authority to interpret this Plan,
> determine whether an employee who terminates
> employment from the Company qualifies for
> benefits from this Plan, and is responsible
> for all aspects of administration.  All
> decisions of the Severance Benefits Committee
> shall be considered final and binding.

(The Plan, Ex. 4 at 7 of 8 to Francescone Dep., Ex. B in Defs.'
Appendix (Doc. No. 40); and Ex. 1 at 7 of 8 to Francescone Dep.,
Ex. 1 in Pl.'s Appendix (Doc. No. 53).)  The Chairman of the Plan
Committee at the time Plaintiff sought severance benefits was
Fred Giese.  (Joint Facts ¶ 35.)  "The Company" referred to in
the Plan consists of FirstEnergy Corp. and any of its operating
companies to which the FirstEnergy Severance Benefits Plan and
its provisions have been extended.  (The Plan, Ex. 4 at 2 of 8 to
Francescone Dep., Ex. B in Defs.' Appendix (Doc. No. 40); and
Ex. 1 at 2 of 8 to Francescone Dep., Ex. 1 in Pl.'s Appendix
(Doc. No. 53).)  For purposes of the Plan, Defendants FirstEnergy
Corp., Pennsylvania Power Company, and Ohio Edison Company, among
others, are participating employers.  (*Id.* at 7 of 8.)  The Plan
is unfunded, with benefits paid directly by the Company from its
general assets.  (*Id.* at 6 of 8.)  The Chief Executive Officer of
FirstEnergy Corp. or his appointed designee may amend or
terminate the Plan at any time.  (*Id.*)  The Plan provides in
relevant part:

7

> [I]f you are a full-time regular employee of
> the Company and not represented by IBEW
> Locals 29, 245, 272, 459 and 1194 you will be
> offered these additional severance benefits
> if you are involuntarily separated when
> business conditions require the closing of a
> facility, corporate restructuring, a
> reduction in workforce, or job elimination.
>
> For the purposes of the Plan, you would also
> be considered involuntarily separated and
> eligible to be offered severance benefits if
> you turn down a job assignment that would:
> result in a reduction in your current base
> salary; contain a requirement that you must
> relocate your current residence for reasons
> related to the new job; or result in a daily
> commute from your current residence to a new
> reporting location of more than one hour each
> way and that is more than 30 minutes longer
> than your present commute.  Turning down a
> job assignment that did not result in the
> above would be considered a voluntary
> termination of employment and you would not
> be offered severance benefits.

(*Id.* at 2 of 8.)

The July 7, 2000 letter regarding Plaintiff's promotion to Customer Service Specialist-A specifically informed him that his new assignment would not result in a decrease in his current salary, his commute time would not exceed sixty minutes, and his commute would not be thirty minutes longer than his present commute.  (Joint Facts ¶ 23.)  Plaintiff admitted in deposition testimony that the position reassignment to Customer Service Specialist-A, detailed in the July 7, 2000 letter he received, did not meet any of these criteria.  (*Id.* ¶ 26.)

8

Despite the allegations in his Complaint that each of the Defendants named in the instant action played a role in denying him severance benefits, Plaintiff testified at his deposition that he is unable to identify who from FirstEnergy, Ohio Edison or Penn Power acted in this regard. (*Id.* ¶ 46.)  He testified that he had no evidence that the Defendants conspired against him or that any of the Defendants lied to him. (*Id.* ¶¶ 47-48.)

C. Standard of Review for Actions to Review Denial of Benefits under section 1132(a)(1)(B)

In 1989 the Supreme Court of the United States decided the appropriate standard of review in actions brought under section 1132(a)(1)(B) to review a denial of benefits.  The Court held:

> [T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . .  Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion."

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).

9

Because the Plan vests the Severance Benefits Committee (the "Committee") with discretionary authority to make benefit claim determinations, under *Firestone Tire*, its decision that Plaintiff is ineligible for severance benefits must be reviewed under the deferential "arbitrary and capricious" standard. However, *Firestone Tire* instructs that if the Committee, as the plan administrator, is operating under a conflict of interest, this Court must weigh that conflict as a "facto[r] in determining whether there is an abuse of discretion."[1]  489 U.S. at 115.  In keeping with the holding of the Court in *Firestone Tire*, the Court of Appeals for the Third Circuit decided that when the district court evaluates a decision to deny benefits made by a discretionary decisionmaker who is operating under a conflict of interest, it should determine the nature and extent of any conflicts of interest, then use a "sliding scale approach" that approximately calibrates "the intensity of [its] review to the intensity of the conflict."  *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 393 (3d Cir. 2000).  Plaintiff has the burden of demonstrating the existence of a conflict of interest by the decisionmaker.[2]  *Pinto,* 214 F.3d at 386 (citing

---

1.  "The 'arbitrary and capricious' standard is essentially the same as the 'abuse of discretion' standard." *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 n.4 (3d Cir. 1993)

2.  *See Kosiba v. Merck & Co.*, 384 F.3d 58 (3d Cir. 2004)
                                                    (continued...)

10

*Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees,* 970 F.2d 1165, 1173 (3d Cir.), *cert. denied,* 506 U.S. 1021 (1992)).  He can meet his burden by '"show[ing] the kind of conflict of interest that could realistically be expected to bias the decision makers.'"  *Id.*  Here, Plaintiff has not claimed that the Committee was operating under a conflict of interest when it decided to deny him severance benefits.  Indeed, the parties agree that the arbitrary and capricious standard of review is appropriate.  The record, however, establishes that the severance plan at issue is unfunded and that benefits under the Plan "are paid directly by the Company from its general assets." (The Plan, Ex. 4 at 7 of 8 to Francescone Dep., Ex. B in Defs.' Appendix (Doc. No. 40); and Ex. 1 at 7 of 8 to Francescone Dep., Ex. 1 in Pl.'s Appendix (Doc. No. 53).)  This raises the possibility of a financial conflict of interest.  "[A]n employer-fiduciary may be subject to a conflict of interest requiring heightened scrutiny when its plan is 'unfunded,' that is, when it pays benefits out of operating funds rather than from a separate

---

2.(...continued)
    (the court of appeals reversed where the district court had applied the arbitrary and capricious standard of review although there was some evidence of procedural bias in the employer's intervention in the appeal process by requesting an independent exam which, it turned out, contradicted the diagnosis of the plaintiff's treating physician and provided a basis for denial of benefits.  The court concluded the district court should have applied a "moderately heightened standard of review").

ERISA trust fund."[3]  *Vitale v. Latrobe Area Hosp.,* 420 F.3d 278, 282 (3d Cir. 2005) (*citing Smathers v. Multi-Tool, Inc.,* 298 F.3d 191, 197-98 (3d Cir. 2002) and *Stratton v. E.I. DuPont De Nemours & Co.,* 363 F.3d 250, 254-55 (3d Cir. 2004)).  However, there is a decrease in the risk of a conflict of interest

> where the administrator and funder of the
> plan is the employer, rather than an
> insurance company, because the employer has
> "incentives to avoid the loss of morale and
> higher wage demands that could result from
> denials of benefits" suggesting that there is
> at least some counter to the incentive not to
> pay claims.

*Smathers v. Multi-Tool, Inc.,* 298 F.3d 191, 197 (3d Cir. 2002) (*quoting Nazay v. Miller,* 949 F.2d 1323, 1335 (3d Cir. 1991)).  In *Smathers,* the Court of Appeals for the Third Circuit held that the employer had a conflict of interest that required the court to review the denial of benefits under a heightened arbitrary and capricious standard where the employer would benefit from the denial of a claim because it was directly funding a portion of its employee health and welfare benefit plan, and would, therefore, be out of pocket in excess of $22,000.00 if it had to pay the claim.  298 F.3d at 198-99.  Furthermore, the court of appeals considered the fact that the plaintiff was not an

---

3.  A heightened standard of review is also indicated when "procedural irregularity, bias, or unfairness in the review of a claimant's application for benefits" is demonstrated. *Vitale,* 420 F.3d at 283.  In the instant case, Plaintiff has not alleged any irregularity, bias, or unfairness in the Committee's decision.

employee at the time the employer made its decision to deny his claim, noting that "the counterbalancing of [the employer's] monetary self-interest by possible concerns about the impact of its decision on morale and wage demands would thereby be lessened." *Id.* at 198. The court decided that it would accord slightly less deference to the administrator's decision ("we will not slide very far down the scale"), characterizing the conflict of interest there as "not extraordinary." *Id.* at 199. The facts in the instant case parallel those in *Smathers*. The Plan, here, is unfunded and Defendant FirstEnergy will be out of pocket for any benefits it is required to pay Plaintiff under the Plan.[4] Also, Plaintiff was not an employee when the Committee issued its decision that he was not eligible for severance benefits under the Plan. His last date on the payroll was August 1, 2000 (Ex. 6 to Francescone Dep. in Pl.'s Appendix (Doc. No. 53) Ex. 1) and he was notified by the Committee on October 26, 2000 that he was ineligible for severance benefits (Ex. 5 to Francescone Dep. in Defs.' Appendix (Doc. No. 40) Ex. B and Pl.'s Appendix (Doc. No. 53) Ex. 1). Accordingly, like *Smathers,* the appropriate standard of review of the Committee's denial of severance

---

4.   Plaintiff testified that he calculated that under the severance package he is entitled to "somewhere around $35,000 or $36,000." (Francescone Dep., Ex. B to Defs.' Appendix (Doc. No. 40), at 84:20-25.)

benefits to Plaintiff is a slightly heightened "arbitrary and capricious" standard.

D. <u>Discussion</u>

    1.   <u>Defendants' motion for summary judgment as to Plaintiff's claim that Defendants breached their fiduciary duty under ERISA, in violation of section 502(a)(3)</u>

Section 502(a)(3) provides that a civil action may be brought:

> (3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . .

29 U.S.C.A. § 1132(a)(3) (West 1999). The Supreme Court of the United States has held that subsection (B) of section 502(a)(3) authorizes relief for an individual who is harmed by a breach of fiduciary duty. *Varity Corp. v. Howe et al.,* 516 U.S. 489, 507 (1996). By statute, the relief available under section 502(a)(3)(B) is "appropriate equitable relief," of which the Supreme Court observed:

> [W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

*Varity*, 516 U.S. at 515. Furthermore, in *Great-West Life & Annuity Ins. Co. v. Knudson*, in deciding whether an action to

enforce a reimbursement provision of an ERISA plan is available under ERISA section 502(a)(3), the Supreme Court of the United States explained that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity . . . .'" 534 U.S. 204, 210 (2002) (emphasis in original) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)). In *Smith v. Contini*, 205 F.3d 597 (3d Cir. 2000), the plaintiff, after being denied retirement benefits, sought injunctive and other appropriate equitable relief, alleging that the defendants' construction of the pension plan they managed violated ERISA. Specifically, he contended that pursuant to ERISA's ten-year vesting requirement, he was entitled to benefits under a deferred pension plan by reason of his ten and one-half years of service. *Contini*, 205 F.3d at 606. The court of appeals upheld the finding of the district court that although the plaintiff's argument might have merit "it concerns the application of the terms of the plan to [him] and not whether the terms violate ERISA." *Id*. It agreed with the district court's reasoning that "such a challenge must be brought pursuant to ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), dealing with the denial of benefits, and not in an action seeking equitable relief to remedy a breach of fiduciary duty under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3)." *Id*. Similarly, in *Ream v. Frey*, 107 F.3d 147, 152-53 (3d Cir. 1997), the court of

appeals, in deciding the scope of the fiduciary duties of a plan trustee under ERISA when the trustee is resigning, emphasized "that a court must apply ERISA § 502(a)(3)(B) cautiously when an individual plan beneficiary seeks 'appropriate equitable relief.' Such caution would be consistent with the concerns the Supreme Court expressed in *Varity* [516 U.S. 489, 507 (1996)] about a court being too expansive in granting relief."

In the instant case, Plaintiff did not address Defendants' summary judgment motion as to this claim, nor did he request summary judgment on his behalf as to this claim. Moreover, Defendants point out that Plaintiff has admitted that he seeks only payment of benefits.  Furthermore, he testified at his deposition that he is unable to identify who from FirstEnergy, Ohio Edison or Penn Power played a role in denying him severance benefits.  (Joint Facts ¶ 46.)  He also testified that he had no evidence that the Defendants conspired against him or that any of the Defendants lied to him.  (*Id.* ¶¶ 47-48.) Accordingly, because Defendants have met their burden of demonstrating the absence of a genuine issue of material fact as to the relief Plaintiff seeks, and because Plaintiff has failed to adduce facts that would establish any breach of fiduciary duty, they are entitled to summary judgment as to this claim.

16

2.   <u>Plaintiff's and Defendants' motions for</u>
     <u>summary judgment as to Plaintiff's claim for</u>
     <u>recovery of severance benefits under</u>
     <u>502(a)(1)(B) of ERISA</u>

Under the arbitrary and capricious standard:

a plan administrator's interpretation of a
plan may be disturbed "only if it is 'without
reason, unsupported by substantial evidence
or erroneous as a matter of law."   A decision
is supported by "substantial evidence if
there is sufficient evidence for a reasonable
person to agree with the decision."

*Courson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136,

142 (3d Cir. 2000) (internal citations omitted).   Furthermore,

"'[A] court is not free to substitute its own judgment for that

of the defendants in determining eligibility for plan benefits.'"

*Orvosh v. The Program of Group Ins. for Salaried Employees of*

*Volkswagen of America*, 222 F.3d 123, 129 (3d Cir. 2000) (*quoting*

*Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir.

1993)).   Having concluded, however, that the Committee's decision

to deny benefits should be reviewed under a slightly heightened

arbitrary and capricious standard, the Committee's decisionmaking

process must be scrutinized "more penetratingly . . . than would

normally be conducted under the arbitrary and capricious

standard."   *Smathers,* 298 F.3d at 199.

Here, Defendants argue that the Committee's denial of

benefits was reasonable and not arbitrary and capricious.

Conversely, in his motion for partial summary judgment Plaintiff

argues that the evidence clearly supports a finding by the Court

17

that the Committee's denial of severance benefits was not
supported by substantial evidence and was, therefore, arbitrary
and capricious.  Specifically, Plaintiff argues that the facts
demonstrate that he was promoted to a higher paying salary
position and then demoted to a lower salary position days later,
which resulted in a loss of salary and triggered his eligibility
to receive severance benefits under the Plan.  (Pl.'s Reply Br.
(Doc. No. 54) at 3.)  He testified that he had an actual decrease
in his standard rate of pay from $48,150.00 to $43,138.00 (52:5-
15), however, he admitted that his actual pay never decreased and
he was never told that it would decrease  (Dep. 68:25; 69:1-6).

        Under the terms of the Severance Plan, an employee is
ineligible for severance benefits if he "turn[s] down a job
assignment that would:  result in a reduction in [his] current
base salary . . . ."  (The Plan, Ex. 4 at 7 of 8 to Francescone
Dep., Ex. B in Defs.' Appendix (Doc. No. 40); and Ex. 1 at 7 of 8
to Francescone Dep., Ex. 1 in Pl.'s Appendix (Doc. No. 53).)
The Plan gives the Severance Plan Committee discretion to
interpret the terms of the Plan.  (Defs.' Br. (Doc. No. 38) at
6.)  Here, the figures used by the Committee when it interpreted
the term "current base salary" in the Plan, were the actual
salaries Plaintiff received, $45,443.00 and $47,942.00,
respectively.  (See Exs. 5 & 7 to Francescone Dep. in Defs.'
Appendix (Doc. No. 40) Ex. B, and Pl.'s Appendix (Doc. No. 53)

18

Ex. 1.)  Plaintiff, on the other hand, bases his claim for severance benefits on a decrease in the standard rate of pay for the Customer Specialist-A position of $48,150.00 to the standard rate of pay for the Customer Specialist-B position of $43,138.00. Although the Plan does not define the term "current base salary," a reading of the entire Plan supports the Committee's interpretation of that term.  Specifically, the plan uses the terms "base salary" and "base weekly salary" in describing the formula for calculating severance benefits.  (The Plan, Ex. 4 at 3 of 8 to Francescone Dep., Ex. B in Defs.' Appendix (Doc. No. 40); and Ex. 1 at 3 of 8 to Francescone Dep., Ex. 1 in Pl.'s Appendix (Doc. No. 53).)  The Plan states, "For purposes of the Plan, a full-time regular employee's base week's salary shall be calculated as 40 hours per week paid at the employee's base rate of pay."  (*Id.* at 4 of 8.)  Furthermore, in the examples the Plan provides for calculating the amount of severance benefits to which an employee is entitled, it presumes the employee earns $10.00 per hour, and multiplies the hours per week worked by the employee by this amount.  (*Id.*)  Thus, it was not unreasonable for the Committee to use Plaintiff's actual salary as the basis for its eligibility determination, rather than the standard rate of each employment position.

Nor was it unreasonable for the Committee to conclude that Plaintiff was ineligible for severance benefits.  The

July 7, 2000 letter Plaintiff received, which informed him of his
promotion, stated that the position of Customer Service
Specialist-A had a standard rate of $48,150.00, but that his
salary for this position was "to be determined."    (Ex. 8 to
Francescone Dep. in Defs.' Appendix (Doc. No. 40) Ex. B, and
Pl.'s Appendix (Doc. No. 53) Ex. 1.)  When he was informed six
days later by his supervisor, Ralph Smith, that the promotion was
a mistake and that he would be given the assignment of Customer
Service Specialist-B, he did not know what the salary for the
Specialist-A position was.  (Joint Statement of Material Facts
(Doc. No. 41) ¶ 29.)  The Committee informed him on October 26,
2000 that he did not meet the Plan's eligibility requirement of a
reduction in base salary. (Ex. 5 to Francescone Dep. in Defs.'
Appendix (Doc. No. 40) Ex. B, and Pl.'s Appendix (Doc. No. 53)
Ex. 1.)  It reconsidered its decision following his appeal and on
March 6, 2001 informed him that its original decision would
stand.  (*Id.* Ex. 7.)  The Committee considered Plaintiff's
termination of employment to be voluntary because he had turned
down a job assignment that did not result in a reduction of pay.
(*Id.*)  Specifically, the Committee found that Plaintiff was again
offered the position of Customer Service Specialist-A at an
increased salary of $47,942.00 by Regional President Lynn
Cavalier on July 21, 2000, and that as a result of this
conversation he was paid at the annual rate of $47,942.00

20

effective July 7, 2000 through the date of his resignation,
August 1, 2000.  (*Id.*)  Although Plaintiff denies that
Ms. Cavalier offered him the Specialist-A position with a salary
of $47,942.00, he testified that he believed that his pay
contained an increase in salary "somewhere around this
$47,942.00."  (Francescone Dep. at 64:6-25; 65:1-13, Ex. B in
Defs.' Appendix (Doc. No. 40) and Ex. 1 in Pl.'s Appendix (Doc.
No. 53).)  Significantly, Plaintiff testified that he was never
told that his actual salary would decrease and at no time did he
receive a decrease in his actual pay.  (*Id.* at 68:20-25; 69:1-6.)
Thus, even under a slightly heightened arbitrary and capricious
standard of review, it was reasonable, and not erroneous as a
matter of law, for the Committee to conclude that Plaintiff was
ineligible to receive benefits under the Severance Plan because
he never received a reduction in his base salary.  Accordingly,
Plaintiff's motion for summary judgment should be denied and
Defendants' motion for summary judgment should be granted as to
this claim.

III. <u>CONCLUSION</u>

          Under the slightly heightened arbitrary and capricious
standard of review applicable in the instant case, the
Committee's decision to deny Plaintiff severance benefits should
not be disturbed.  Plaintiff has failed to demonstrate that there
is a genuine issue of material fact as to the Committee's

interpretation of the Plan.  Accordingly, it is recommended that Plaintiff's motion for partial summary judgment be denied.  It is further recommended that Defendants' motion for summary judgment be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

_s/Ila Jeanne Sensenich_
ILA JEANNE SENSENICH
U.S. Magistrate Judge

Dated:  May 26, 2006

Notice sent electronically to:

The Honorable Joy Flowers Conti
United States District Judge

Gary F. Lynch, Esquire
Pamela J. Miller, Esquire
Gary F. Lynch, P.C.
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA  16107

A. Patricia Diulus-Myers, Esquire
Mark Goldner, Esquire
Mark D. Yablonski, Esquire
Jackson Lewis LLP
One PPG Place, 28th Floor
Pittsburgh, PA  15222